**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| OLIVER WATSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. _____ ) ) JURY TRIAL DEMANDED |
| MOBILEIRON, INC., TAE HEA NAHM, JESSICA DENECOUR, KEN KLEIN, JAMES TOLONEN, SIMON BIDDISCOMBE, ANJALI JOSHI, and RISHI BAJAJ, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on September 28, 2020 (the "Proposed Transaction"), pursuant to which MobileIron, Inc. ("MobileIron" or the "Company") will be acquired by Ivanti, Inc. ("Parent") and Oahu Merger Sub, Inc. ("Merger Sub," and together with Parent, "Ivanti").

2. On September 26, 2020, MobileIron's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Ivanti. Pursuant to the terms of the Merger Agreement, MobileIron's stockholders will receive $7.05 in cash for each share of MobileIron common stock they own.

3. On October 14, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MobileIron common stock.

9. Defendant MobileIron is a Delaware corporation and maintains its principal executive offices at 490 East Middlefield Road, Mountain View, California 94043. MobileIron's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MOBL."

10. Defendant Tae Hea Nahm is Chairman of the Board of the Company.

11. Defendant Jessica Denecour is a director of the Company.

12. Defendant Kenneth Klein is a director of the Company.

13. Defendant James Tolonen is a director of the Company.

14. Defendant Simon Biddiscombe is Chief Executive Officer, President, and a director of the Company.

15. Defendant Anjali Joshi is a director of the Company.

16. Defendant Rishi Bajaj is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

18. MobileIron has the industry's first mobile-centric security platform for the "Everywhere Enterprise."

19. The Company's platform combines award-winning and industry-leading unified endpoint management capabilities with passwordless multi-factor authentication and mobile threat defense to validate the device, establish user context, verify the network, and detect and remediate threats to ensure that only authorized users, devices, apps, and services can access business resources.

20. Over 20,000 organizations, including the world's largest financial institutions, intelligence agencies, and other highly regulated companies, have chosen the Company to enable a seamless and secure user experience in the Everywhere Enterprise.

21. On September 26, 2020, MobileIron's Board caused the Company to enter into the Merger Agreement with Ivanti.

22. Pursuant to the terms of the Merger Agreement, MobileIron's stockholders will receive $7.05 in cash for each share of MobileIron common stock they own.

23. According to the press release announcing the Proposed Transaction:

> MobileIron (NASDAQ:MOBL), the mobile-centric security platform for the Everywhere Enterprise, today announced that it has entered into an agreement to be acquired by Ivanti, Inc., a leading provider of enterprise-grade intelligent IT management and security software solutions. Ivanti today also announced it has entered into an agreement to acquire Pulse Secure LLC, a leading provider of Secure Access and mobile security solutions to enterprise customers.
>
> Under the terms of the agreement, Ivanti will acquire all outstanding shares of MobileIron common stock for a total value of approximately $872 million in cash. MobileIron stockholders will receive $7.05 in cash per share, representing a 27% premium to the unaffected closing price as of September 24, 2020. MobileIron's Board of Directors unanimously approved the transaction and believes the transaction will maximize stockholder value. . . .
>
> Transaction Highlights
>
> - Under the terms of the agreement with MobileIron, Ivanti will acquire all outstanding shares of MobileIron common stock for a total value of approximately $872 million. MobileIron stockholders will receive $7.05 in cash per share, representing a 27% premium to the unaffected closing price as of September 24, 2020.
>
> - MobileIron's Board of Directors unanimously approved the deal and believes the transaction will maximize stockholder value.
>
> - Morgan Stanley Senior Funding, Inc., BofA Securities, UBS Investment Bank, and BMO Capital Markets are providing debt financing for the acquisitions.
>
> - The closing of the transaction is expected in late Q4, subject to approval by MobileIron stockholders and the satisfaction of regulatory and customary closing conditions.

Advisors

Barclays acted as the exclusive financial advisor to MobileIron. Morrison & Foerster LLP acted as legal advisor to MobileIron.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

24. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

25. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

26. First, the Proxy Statement omits material information regarding the Company's financial projections.

27. The Proxy Statement fails to disclose: (i) all line items used to calculate non-GAAP operating income (loss), non-GAAP EBITDA, non-GAAP net income (loss), and unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Barclays Capital Inc. ("Barclays").

30. With respect to Barclays' Selected Comparable Company Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

31.  With respect to Barclays' Selected Precedent Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

32.  With respect to Barclays' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected after-tax unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values of MobileIron; (iii) Barclays' basis for selecting a range of terminal value multiples of 9.0x to 12.0x; (iv) the individual inputs and assumptions underlying the range of after-tax discount rates of 9.5% to 11.5% and the range of perpetuity growth rates of 3.0% to 4.5%; (v) the estimated net debt used in the analysis; (vi) the estimated value of NOLs; and (vii) the fully diluted number of shares of MobileIron common stock.

33.  With respect to Barclays' Equity Analyst Target Prices Analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

34.  With respect to Barclays' Illustrative Leveraged Acquisition Analysis, the Proxy Statement fails to disclose Barclays' basis for assuming: (i) a debt capital structure of MobileIron comprised of pro forma leverage of total debt to last-twelve month revenue of 1.5x; (ii) an equity investment that would achieve a rate of return of approximately 15% to 23% during a 5.5 year period; and (iii) a projected non-GAAP EBITDA terminal value multiple of 9.0 to 12.0x for such period.

35.  With respect to Barclays' Illustrative Transaction Premium Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. Third, the Proxy Statement omits material information regarding Barclays.

38. The Proxy Statement provides:

> Barclays and its affiliates in the past have provided, currently are providing, or in the future may provide, investment banking services to Ivanti's principal stakeholder and the other party that had entered into the Joinder . . . and certain of their respective affiliates and portfolio companies and have received or in the future may receive customary fees for rendering such services, including (i) having acted or acting as financial advisor to such parties and certain of their respective portfolio companies and affiliates in connection with certain mergers and acquisition transactions; (ii) having acted or acting as arranger, bookrunnner and/or lender for such parties and certain of their respective portfolio companies and affiliates in connection with their respective corporate finance needs, including providing financing for various acquisition transactions; and (iii) having acted or acting as underwriter, initial purchaser and placement agent for various equity and debt offerings undertaken by such parties and certain of their respective portfolio companies and affiliates.

However, the Proxy Statement fails to disclose the amount of compensation Barclays has received or will receive for providing such services.

39. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and MobileIron**

42. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. MobileIron is liable as the issuer of these statements.

44. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

45. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

47. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

48. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of MobileIron within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of MobileIron and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

54. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 22, 2020             **RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
     Seth D. Rigrodsky (#3147)
     Brian D. Long (#4347)
     Gina M. Serra (#5387)
     300 Delaware Avenue, Suite 210
     Wilmington, DE 19801
     Telephone: (302) 295-5310
     Facsimile: (302) 654-7530
     Email: sdr@rl-legal.com
     Email: bdl@rl-legal.com
     Email: gms@rl-legal.com

*Attorneys for Plaintiff*